IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINA M. GIFFORD | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  07-2210 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM**

LOWELL A. REED, Jr., Sr. J                                                                 FEBRUARY 25, 2008

       Before the court for consideration is plaintiff's brief and statement of issues in support of request for review[1] (Doc. No. 5) and the response and reply thereto (Doc. Nos. 6, 8).  The court makes the following findings and conclusions:

       1.      On January 9, 2006, Gina Gifford ("Gifford") filed for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, alleging an onset date of March 1, 2005.  (Tr. 34-38).  Throughout the administrative process, including an administrative hearing held on October 30, 2006 before an ALJ, Gifford's claims were denied.  (Tr. 3-5; 8-20; 24; 25-29).  Pursuant to 42 U.S.C. § 405(g), on May 31, 2007, Gifford filed her complaint in this court seeking review of that decision.

       2.      In his decision, the ALJ concluded that Gifford's status post fracture of her right ankle and status post fracture of the left wrist were severe impairments.  (Tr. 13 ¶ 3; 13 Finding 3).[2]  The ALJ further concluded that Gifford's impairments did not meet or equal a listing, that she retained the residual functional capacity ("RFC") to perform sedentary work that did not require more than occasional postural activities, climbing, or working with heights, and that she was not disabled.  (Tr. 14 ¶¶ 2, 4; 15 ¶ 1; 17 ¶ 3; 19 ¶ 4; 14 Finding 4; 15 Finding 5; 19 Finding 11).

       3.      The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence.  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  It is more than a mere scintilla but may be less than a preponderance.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).   If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently.  Hartranft v.

---

     [1]Plaintiff filed a motion for summary judgment with her brief and statement of issues in support of request for review, which the court will construe only as a brief pursuant to the procedural order. (Doc. No. 5).

     [2] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

    4.  Gifford raises three arguments in which she alleges that the determinations by the ALJ were either not supported by substantial evidence or were legally erroneous. These arguments are addressed below. However, upon due consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

    A.  Gifford argues that the ALJ erred in rejecting her credible testimony. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." Pysher v. Apfel, No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing Van Horn v. Schweiker, 717 F.2d 871, 973 (3d Cir. 1983)). Moreover, such determinations are entitled to deference. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 271 (3d Cir. 2003). Pursuant to the regulations, the ALJ uses a two pronged analysis to make a credibility determination. See 20 C.F.R. § 416.929. The ALJ must first determine if there is an underlying medically determinable impairment that could reasonably be expected to produce the alleged symptoms. See 20 C.F.R. § 416.929(c)(1). If the ALJ finds that such an underlying condition exists, the ALJ must then decide to what extent the symptoms actually limit the claimant's ability to work. See Id. The ALJ is also required to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. Hartranft, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c))

    Here, the ALJ determined that Gifford's medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, the ALJ found that Gifford's statements regarding the intensity, duration, and limiting effects of her symptoms were not entirely credible because of the "discrepancies between [her] assertions and information contained in the documentary reports." (Tr. 17 ¶ 2). Before specifically discussing Gifford's credibility, the ALJ noted that on July 5, 2005, an x-ray revealed that Gifford's wrist fracture was healed, Pedro Beredjiklian, M.D. ("Dr. Beredjiklian") reported she had full range of motion in her wrist, and Gifford was not complaining of any specific discomfort with regard to her hand. (Tr. 16 ¶ 3; 93). The ALJ referenced the fact that although Gifford occasionally complained of increased ankle pain during physical therapy, one of her treating doctors, Enyi Okereke, M.D. ("Dr. Okereke"), on February 1, 2006 determined that Gifford's ankle and calcaneal fractures had satisfactorily healed.[3] (Tr. 16 ¶¶ 4-5; 125). On June 2, 2006, Gifford's other treating orthopedist, John Esterhai, Jr., M.D. ("Dr. Esterhai"), found "no deterioration in her gait, stance, or mobility." (Tr. 16 ¶ 5; 168). As the ALJ noted, Gifford testified that her treating doctors told her to elevate her right leg to desk level for five to ten hours a day, however, the medical records reflect no such suggestion or need.[4] (17 ¶ 2; 178; 181-82). The ALJ also found Gifford less than credible

---

[3] Dr. Okereke stated that despite her fractures healing, Gifford would always experience pain and would have a "difficult time with any chore that requires her to stand on her feet." (Tr. 125).

[4] Gifford argues that since the leg elevating was not reflected in the record, the ALJ had a duty to ask Gifford's treating doctors about it. However, 20 C.F.R. § 404.1512(a) provides that it is the claimant's duty to "bring to our attention everything that shows that you are blind or disabled" including evidence demonstrating the effect the claimant's impairments have on the claimant's ability to perform work on a sustained basis. Thus, the ALJ did not fail in his duty in this regard.

because of the vacations she was able to take and her ability to use the treadmill everyday.[5] (Tr. 17 ¶ 2; 179; 183-84). Gifford testified that she had not cooked a meal since she fractured her wrist and ankle, however, that was inconsistent with the statements made by Gifford and her husband on March 13, 2006 that she cooked dinner gradually throughout the day. (Tr. 53; 64; 179). Thus, the ALJ's determination that Gifford was only partially credible was supported by substantial evidence.

   B. Gifford also argues that the ALJ erred in failing to include some alleged limitations in the RFC and hypothetical. Specifically, Gifford complains that the ALJ did not include her inability to squat, her need to rest during the day because of poor sleep at night, the necessity to elevate her leg periodically throughout the day, her limited activities of daily living, and the effect of increased activity on her ankle and foot.

   With regard to Gifford's alleged inability to squat, this is essentially an argument that the ALJ improperly rejected the opinion of one of Gifford's doctors.[6] The doctor in question is Howard Brooks, D.O. ("Dr. Brooks"), who Gifford testified was her family doctor until he retired. (Tr. 189). Although Gifford was unsure whether Dr. Brooks examined her after she was injured, he apparently examined her a year after the accident and filled out a medical source statement on March 15, 2006.[7] (Tr. 128-35; 189-91). In his medical source statement, he concluded that Gifford could not squat. (Tr. 130). Although the ALJ included a limitation of only occasional postural activities in the RFC and the hypothetical, the ALJ rejected Dr. Brooks' opinion that Gifford could perform absolutely no postural activities. (Tr. 17 ¶¶ 1, 3). On November 18, 2005, Gifford's treating orthopedists stated they were "delighted" with her x-rays, and by February 1, 2006, Dr. Okereke determined Gifford's ankle and calcaneal fractures had satisfactorily healed. (Tr. 122; 125). Although Dr. Okereke expected Gifford would always experience pain and would have difficulty performing tasks that must be done while standing, neither of her orthopedists stated she could absolutely never squat or perform any postural activities. (Tr. 125). Gifford argues that common sense would lead one to believe that she could not squat, however, as discussed *supra*, it is the claimants' responsibility to produce all of the medical evidence showing the claimant's impairments and the effect those impairments have on the claimant's ability to perform work on a sustained basis. See 20 C.F.R. § 404.1512(a). Since the medical record does not support a finding that Gifford is incapable of squatting, the ALJ did not err in not including the limitation in the RFC and hypothetical.

   Because the ALJ found Gifford to be partially credible and the medical

---

[5] Gifford asserts that the ALJ should not be considering her activities of daily living and ability to travel in assessing her credibility, however, 20 C.F.R. § 404.1529 states that "other evidence," including daily activities, will be considered in evaluating a claimant's symptoms.

[6] Although Dr. Brooks was Gifford's treating primary care physician from 1992 until the doctor retired, the medical record reflects he only examined her three times after the injury that is the basis for her disability application. (Tr. 128-33; 137). I also note that even if Dr. Brooks was working with Gifford's primary care physician, Elizabeth Ziegler, M.D. ("Dr. Ziegler"), her name only appears in the record as getting a carbon copy from Gifford's treating doctors on four occasions, and thus, the record does not reflect that she examined or saw Gifford with any regularity. (Tr. 125; 143; 144; 145). Pursuant to 20 C.F.R. § 404.1502, for the relevant time period, Dr. Brooks would only be considered an examining physician, since he did not have an "ongoing treatment relationship" with Gifford subsequent to her accident. Thus, Dr. Brooks' opinion is entitled to less weight than that of a treating doctor. 20 C.F.R. § 404.1527(d)(2). Although the ALJ improperly considered Dr. Brooks to be a treating physician, the error is harmless. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with a social security ruling would not have changed the outcome of the case).

[7] The medical record only appears to include two other examinations by Dr. Brooks on February 8 and 15, 2006. (Tr. 137). He also ordered a bone densitometry and chest radiographs in February of 2006. (Tr. 140-42).

3

record does not support her need to sleep during the day or include any suggestion or discussion of her need to elevate her leg, the ALJ properly did not include these limitations.  Likewise, the ALJ found Gifford was not totally credible regarding her activities of daily living or the effects of increased activity on her ankle.  However, the ALJ did limit her RFC to sedentary work with occasional postural activities and no climbing or heights to accommodate the limitations supported by the record.  Thus, the ALJ did not err in excluding these above mentioned limitations from the RFC or hypothetical.

       5. As a result of the above, Gifford's claims fail and judgment will be entered in favor of defendant.

       An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINA M. GIFFORD | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-2210 |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |

## ORDER

AND NOW, this 25th day of February, 2008, upon consideration of the brief in support of review filed by plaintiff and the response and reply thereto (Doc. Nos. 5, 6, and 8) and having found after careful and independent consideration that the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law, for the reasons set forth in the memorandum above, it is hereby **ORDERED** that:

1. **JUDGMENT IS ENTERED IN FAVOR OF THE DEFENDANT, AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** and the motion for summary judgment and the relief sought by Plaintiff is **DENIED**; and

2. The Clerk of Court is hereby directed to mark this case closed.

S/Lowell A. Reed, Jr.
LOWELL A. REED, JR., Sr. J.